Lanzinger, J.,
concurring in judgment only.
{¶ 35} This case comes to us courtesy of the quagmire created by State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917 (“Colon I”), and State v. Colon, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169 (“Colon II”). Previously, an indictment that tracked the statute would have been deemed sufficient to provide the notice that an accused needed to defend himself. State v. Buehner, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162. Now, every indictment that does not specify the degree of culpability for each statutory *404 element is subject to challenge for the first time on appeal. This is a boon to defendants, a headache to appellate courts, and a nightmare to prosecutors.
{¶ 36} And so the major question to be decided is the consequence of the missing mens rea in this indictment. I do not agree that the General Assembly has plainly indicated an intention to impose a standard of strict liability upon the element of brandishing, displaying, using, or indicating possession of a deadly weapon in an aggravated robbery charged under R.C. 2911.01(A)(1) and thus would hold that the mens rea of recklessness — the default culpability standard— applies. Nevertheless, I concur in the judgment to reverse the judgment of the court of appeals and reinstate Lester’s conviction, although for altogether different reasons.
The Purpose of an Indictment
{¶ 37} The purpose of an indictment issued by a grand jury has always been to give notice to the accused: “[A] criminal offense must be charged with reasonable certainty in the indictment so as to apprise the defendant of that which he may expect to meet and be required to answer; so that the court and jury may know what they are to try, and the court may determine without unreasonable difficulty what evidence is admissible.” Horton v. State (1911), 85 Ohio St. 13, 19, 96 N.E. 797.
{¶ 38} As recently as in State v. Buehner, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, we explained:
{¶ 39} ‘“Under Crim.R. 7(B), an indictment “may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged.”
{¶ 40} “ ‘An indictment meets constitutional requirements if it “first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.” ’ ” Id. at ¶ 8-9, quoting State v. Childs (2000), 88 Ohio St.3d 558, 564-565, 728 N.E.2d 379, quoting Hamling v. United States (1974), 418 U.S. 87, 117-118, 94 S.Ct. 2887, 41 L.Ed.2d 590.
{¶ 41} Until Colon I and II, the typical indictment that recited the language of a criminal statute as written was presumed to give appropriate notice to the accused of the charge that was to be defended against. Furthermore, if a question existed, a bill of particulars could be requested, and a motion to amend the indictment could always be filed under Crim.R. 7(D).
*405 The Colon Complications
{¶ 42} In Colon I and II, for the first time, the court decided that a defective indictment could lead to structural error because it omitted the required mens rea for robbery charged under R.C. 2911.02(A)(2), even though the indictment tracked the statute under which Colon was charged. The majority in Colon I determined that the defendant had no notice that the state was required to prove that he had been reckless in inflicting, threatening to inflict, or attempting to inflict physical harm on another while committing or attempting to commit a theft offense. Colon I, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, at ¶ 30. The Colon I majority further decided that the defendant was misled even though recklessness is the default standard listed in R.C. 2901.21(B), the criminal statute on culpability, and even though R.C. 2901.22(E) provides, “When recklessness suffices to establish an element of an offense, then knowledge or purpose is also sufficient culpability for such element.”
{¶ 43} The majority opinion in this case states, “Colon II clarified that the omission of the mens rea element from an indictment does not require automatic reversal if the trial court properly instructs the jury.” But in fact, Colon II has complicated criminal appeals even further. Although harsh, Colon I seemed to require reversal without exception when an indictment lacked a mens rea for an element of the crime; Colon II backed away from automatic reversal and requires an appellate court to look further at jury instructions in addition to making the determination of whether a “specific level of culpability” is required for an element of the crime.
The Effect of a Missing Mens Rea
{¶ 44} Formerly, legislative silence as to mens rea in a statute defining an offense had been interpreted as an indication of the purpose to impose strict liability. See, e.g., State v. Lisbon Sales Book Co. (1964), 176 Ohio St. 482, 27 O.O.2d 443, 200 N.E.2d 590, paragraph two of the syllabus. However, the rule was modified in 1974, when the General Assembly repealed former R.C. 2901.21 and enacted a new statute expressing how mens rea, i.e., level of “guilt,” is to be established. R.C. 2901.21 now provides:
{¶ 45} “(A) Except as provided in division (B) of this section, a person is not guilty of an offense unless both of the following apply:
{¶ 46} “(1) The person’s liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing;
{¶ 47} “(2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense.
*406 {¶ 48} “(B) When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.”
{¶ 49} Thus, when a particular culpability standard is not expressed for an element of an offense and the statute does not plainly indicate a purpose to impose strict liability, proof of recklessness is sufficient. State v. Schlosser (1997), 79 Ohio St.3d 329, 331, 681 N.E.2d 911. Recklessness was understood to be the default mens rea standard before the Colon cases. Now, the majority suggests that each time a statute fails to specify mens rea, there is an intention to impose strict criminal liability.
{¶ 50} But the majority’s method of determining strict liability means we will not be taking the General Assembly at its own word, i.e., that recklessness is the default mens rea. This court should not be rewriting statutes. The legislature should determine what acts must be done with some degree of culpability and what acts require no guilty mind at all but are offenses for which a person is strictly liable.
Plain Indication of Strict Liability
{¶ 51} The majority turns the R.C. 2901.21(B) analysis completely around by stating that the 1996 amendment to R.C. 2913.01 that added language prohibiting the brandishing or displaying of a deadly weapon to language prohibiting its possession and control does not establish “that the General Assembly intended to require a specific mental intent.” (Emphasis added.) R.C. 2901.21(B) clearly provides that when an expressed standard of culpability is missing, we are to discover whether the section under discussion “plainly indicates a purpose to impose strict criminal liability.” In contravention of this statutory language, the majority changes the focus of the inquiry from whether there is a plain indication of a purpose to impose strict liability to whether there is an intention to require a specific mental intent.
{¶ 52} In its analysis, the majority relies upon State v. Wharf (1999), 86 Ohio St.3d 375, 715 N.E.2d 172. In Wharf, this court construed R.C. 2911.02(A)(1) and the robbery element that provides that no person attempting or committing a theft offense or fleeing immediately after the attempt or offense shall “have a deadly weapon on or about the offender’s person or under the offender’s control” as a strict liability element. Id. at 378, 715 N.E.2d 172. The court concluded that a mental state with regard to the weapon need not be proven: “Furthermore, one need not have the weapon in one’s possession or under one’s control while committing or attempting to commit a theft offense. A violation of R.C. *407 2911.02(A)(1) will also be found if the offender has a deadly weapon on or about his person, or under his control, while fleeing after such offense or attempt. Thus, no use, display, or brandishing of a weapon, or intent to do any of the aforementioned acts, is necessary according to the plain language of the statute. Had the legislature so intended, it certainly could have required a level of conduct more severe than it did in order to show a violation of the statute.” (Emphasis added.) Id.
{¶ 53} The legislature seems to have done exactly that in R.C. 2911.01(A)(1) where, in addition to requiring that the offender have a deadly weapon on or about the offender’s person or under the offender’s control, the statute also requires that the person “either display the weapon, brandish it, indicate that the offender possesses it, or use it.” R.C. 2911.01(A)(1). The existence of this additional language, which the court in Wharf specifically noted was lacking in R.C. 2911.02(A)(1), is an indication of “a level of conduct more severe” than merely possessing or having a weapon under one’s control. The missing mens rea, therefore, expresses that the default mental state of recklessness is imposed in R.C. 2901.21(B).
{¶ 54} Before Wharf, this court was consistent in applying R.C. 2901.21(B). For example, we recognized a “plain indication” of a purpose to impose strict liability in R.C. 2915.02(A)(1), which prohibits bookmaking, and R.C. 2915.03(A)(1), which prohibits the use of a person’s premises for gambling. See State v. Wac (1981), 68 Ohio St.2d 84, 86-87, 22 O.O.3d 299, 428 N.E.2d 428. The General Assembly had expressly differentiated degrees of culpability, specifying “knowingly” and “recklessly” in portions of the statute, but did not specify the degree of culpability in prohibiting bookmaking or the use of one’s premises for gambling. The court concluded in Wac, “The General Assembly included the culpable mental state of ‘knowingly’ as an element of facilitating bookmaking. Nevertheless, there is no such requirement in the same subsection for bookmaking per se. This exclusion ‘plainly indicates a purpose to impose strict criminal liability * * R.C. 2901.21(B).” Id. at 86, 22 O.O.3d 299, 428 N.E.2d 428. And in addressing the gambling statute, we stated, “The General Assembly included recklessness as an element of permitting gambling on one’s premises in subsection (2) [of R.C. 2915.03]. Subsection (1), however, does not contain a comparable standard. This exclusion ‘plainly indicates a purpose to impose strict criminal liability * * *.’ R.C. 2901.12(B).” Id. at 87, 22 O.O.3d 299, 428 N.E.2d 428.
{¶ 55} In other cases, it was also confirmed that the lack of any expressed mental state means that the standard applicable to the offense is recklessness. See State v. Parrish (1984), 12 Ohio St.3d 123, 124, 12 OBR 164, 465 N.E.2d 873 (because the statute does not expressly differentiate degrees of culpability, “the participants in the crime of prostitution addressed in R.C. 2907.25(A) must *408 possess some degree of criminal intent to be found guilty of either the principal offense or of complicity”).
(¶ 56} In State v. Lozier, 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770, the definition of the phrase “committed in the vicinity of a school” was compared to the phrase “committed in the vicinity of a juvenile” to determine whether “in the vicinity of a school” is a strict liability element in the offense of trafficking in LSD under R.C. 2925.03(C)(5)(b). A person trafficking in LSD in the “vicinity of a juvenile” is liable “whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense.” R.C. 2925.01(BB). We stated that this language “makes it abundantly clear that the offender’s mental state is irrelevant in determining whether the offender has committed an offense ‘in the vicinity of a juvenile.’ ” Lozier, 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770, at ¶ 36. In contrast, “[a]n offense is ‘committed in the vicinity of a school’ if the offender commits the offense on school premises, in a school building, or within one thousand feet of the boundaries of any school premises.” R.C. 2925.01(P). Because the latter definition did not include the knowledge language included in R.C. 2925.01(BB), the General Assembly did not indicate a purpose to impose strict liability to trafficking in LSD in the vicinity of a school, and the default mental state of recklessness applied. Id. at ¶ 45.
{¶ 57} We have also properly applied R.C. 2901.21(B) in repeatedly holding that the “[e]xistence of the culpable mental state of recklessness is an essential element of the crime of endangering children.” State v. Adams (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144, paragraph one of the syllabus (holding that R.C. 2919.22(B)(2) neither specifies a mental state nor plainly indicates a purpose to impose strict liability); State v. O’Brien (1987), 30 Ohio St.3d 122, 30 OBR 436, 508 N.E.2d 144, paragraph one of the syllabus (construing R.C. 2919.22(B)(3)); State v. McGee (1997), 79 Ohio St.3d 193, 680 N.E.2d 975 (construing R.C. 2919.22(A)). In these cases, this court noted that in each of the subsections of the statute, the General Assembly did not specify any degree of culpability or plainly indicate a purpose to impose strict liability.
{¶ 58} Because R.C. 2911.01(A) does not specify a degree of culpability and does not plainly indicate a purpose to impose strict liability, I would hold that recklessness is the degree of culpability for the element of brandishing, displaying, using, or indicating possession of a deadly weapon in the offense of aggravated robbery.
Resolution
{¶ 59} I would frankly call the Colon cases aberrant. Colon I and II render Crim.R. 7(D) and 12(C) and R.C. 2941.29 meaningless. Lester did not raise the *409 issue of a defective indictment at any time during the pendency of the proceedings before the trial court. Had he raised the issue in the trial court, Crim.R. 7(D) would have allowed the state to seek the amendment of the indictment to include the mens rea and would have allowed Lester to move for a discharge of the jury had he been misled or prejudiced by the defect. O’Brien, 30 Ohio St.3d at 125-127, 508 N.E.2d 144. Under Crim.R. 12(C)(2), objections to defects in an indictment must be raised before trial, except for objections to the failure to show jurisdiction in the court or to charge an offense, which may be raised at any time during the pendency of the proceeding.
Joseph T. Deters, Hamilton County Prosecuting Attorney, and Tanner B. McFall, Assistant Prosecuting Attorney, for appellant.
Christine Y. Jones, for appellee.
Timothy Young, State Public Defender, and Spencer Cahoon, Assistant State Public Defender, urging affirmance for amicus curiae, Ohio Public Defender.
{¶ 60} In addition, R.C. 2941.29 provides, “No indictment or information shall be quashed, set aside, or dismissed, or motion to quash be sustained, or any motion for delay of sentence for the purpose of review be granted, nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment or information, unless the objection to such indictment or information, specifically stating the defect claimed, is made prior to the commencement of the trial, or at such time thereafter as the court permits.”
{¶ 61} Reverting to pre-Colon precedent will reinstate the importance of the two criminal rules and the statute. Reviewing courts will not be faced with the issue of defective indictments for the first time on appellate review. They will not be tempted to save convictions by holding that an indictment missing a mens rea indicates a strict liability element rather than an element with the default culpability of recklessness.
{¶ 62} I would reinstate Lester’s conviction because any error in the indictment was not called to the attention of the trial court at a time when the error could have been corrected by the trial court. Therefore, the objection to the defect was waived. I concur in judgment only.