OPINION
Appellant, Christopher C. Fahringer, appeals a judgment of conviction and sentence of the Court of Common Pleas of Defiance County, rendered pursuant to a jury verdict of guilty on one count each of complicity in the commission of kidnapping, and complicity in the commission of abduction. For the reasons that follow, we affirm the judgment of the trial court.
On January 22, 1999, Appellant and co-defendant, Clinton Zeedyk, spent the evening drinking at several establishments in Defiance. During the early morning hours of January 23, 1999, after leaving one establishment in Zeedyk's truck, Appellant and Zeedyk stopped to pick up a hitchhiker, Dewayne Vergith. Vergith told Appellant and Zeedyk that he was looking for a ride to Toledo to purchase crack cocaine. Zeedyk responded by saying that it was not necessary to travel to Toledo because he could get the drugs for Vergith in Defiance. Thereafter, Vergith got in Zeedyk's truck and the three men went to another bar to retrieve Appellant's truck.
Appellant then picked up his truck and followed the other two to Vergith's motel room so that Vergith could get money. The three men then went to co-defendant Pat Michel's house where Zeedyk and Michel concocted a plan to sell Vergith crushed antacid tablets instead of crack cocaine. Before the sale transpired, however, a fight broke out between Zeedyk and Vergith in Michel's garage. As a result, Vergith was badly beaten by both Zeedyk and Michel. Vergith was then tied up with rope and thrown in the back of Zeedyk's truck. Afterward, Zeedyk and Appellant left Michel's house, each driving their own vehicles. While they were driving, Zeedyk and Appellant had several telephone conversations, in which they discussed the situation concerning Vergith. Shortly thereafter, they released Vergith in a remote area of Defiance.
Vergith managed to walk to the nearby residence of Dana Robles' for assistance. Ms. Robles telephoned 911; however, Vergith denied needing medical treatment and subsequently left. Thereafter, Vergith was seen walking down a nearby road by Gary Smiddy, a deputy with the Defiance County Sheriff's Office who was responding to Ms. Robles' telephone call. Vergith was then transported to the Defiance County Sheriff's Office where officers took photographs of his physical condition. After the pictures were taken, Vergith again refused medical treatment and was given a ride back to his motel.
Approximately three to four weeks later, officers received a "crime stoppers" tip that Appellant and the two co-defendants were responsible for the incident. Subsequently, on March 8, 1999, Appellant was indicted on one count each of conspiracy to commit kidnapping in violation of R.C. 2923.01, a second degree felony; complicity in the commission of kidnapping in violation of 2923.03, a first degree felony; complicity in the commission of abduction in violation of 2923.03, a third degree felony; and complicity in the commission of assault in violation of 2923.03, a first degree misdemeanor.
Prior to trial, the State dismissed the complicity in the commission of assault charge and Appellant proceeded to a jury trial on the remaining charges. After the State's case, Appellant moved to dismiss the charges pursuant to Crim.R. 29, which was overruled by the court. On May 27, 1999, the jury returned a verdict of not guilty on the conspiracy to commit kidnapping charge, and a guilty verdict on each of the two complicity charges. On July 27, 1999, the trial court sentenced Appellant to four years in prison on each complicity charge to be served concurrently for a total of four years.
Appellant timely appeals his conviction and sentence, assigning three errors for our review.
Assignment of Error No. 1
 Whether the Defiance County Court of Common Pleas committed reversible error to the prejudice of Defendant/Appellant by permitting the State to introduce photographic evidence which had no evidentiary relevance and which carried a high risk of unfair prejudice or confusion of the jury.
With respect to relevancy, Evid.R. 401 states:
 "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Additionally, Evid.R. 403 states in pertinent part:
 (A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
* * *
 It is well settled that "the admission of photographs is left to the discretion of the trial court." State v. Smith (1997), 80 Ohio St.3d 89, 108; State v. Slagle (1992), 65 Ohio St.3d 597; State v. Landrum (1990), 53 Ohio St.3d 107; State v. Maurer (1984), 15 Ohio St.3d 239. "[T]he probative value of a photograph must outweigh the danger of material prejudice to the defendant and the photograph must not be repetitive." Smith, at 108, quoting State v. Morales (1987), 32 Ohio St.3d 252, 258. The trial court's decision will not be reversed "unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby * * *." Slagle, at 602, quoting State v. Hymore (1967), 9 Ohio St.2d 122, 128. An abuse of discretion has been defined as a decision that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Appellant argues that the trial court erred in admitting photographs of the victim, which portrayed his physical condition shortly after the incident. Specifically, he claims that the sole purpose for the introduction of the photographs was to foster a growing animosity between himself and the jury, and that the prejudicial value of these photographs substantially outweighs any probative value. Appellee, however, argues that the photographs are probative in establishing the identity of the victim and in proving the material elements of both the kidnapping and abduction charges.
Initially, we note that the photographs are probative of the identity of the victim, in light of the fact that the victim was not present at trial to testify. The photographs are also probative of the material elements of kidnapping in violation of R.C. 2905.01, and abduction in violation of R.C. 2905.02. Both offenses contain an identical material element, which requires the removal of another from the place where the other person is found by force or threat. Additionally, a defendant may be convicted of kidnapping if the purpose for the removal is to terrorize or inflict serious physical harm.
Any danger of unfair prejudice by the introduction of the photographs does not substantially outweigh the probative value with respect to the identity of the victim and the material elements of the offenses. Therefore, we find that the trial court did not abuse its discretion in admitting the photographs into evidence.
Accordingly, Appellant's first assignment of error is not well taken and is therefore overruled.
Assignment of Error No. 2
 Whether the Defiance County Court of Common Pleas committed reversible error to the prejudice of Defendant/Appellant when overruling his motion made pursuant to Ohio Criminal Rule 29 for acquittal on either or both indictments.
Criminal Rule 29 provides in pertinent part:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *
 In addressing the sufficiency standard in Crim.R. 29, the Ohio Supreme Court stated:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 State v. Jenks (1991), 61 Ohio St.3d 259, paragraph 2 of the syllabus.
The statute on complicity, R.C. 2923.03, states in pertinent part:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 * * *
(2) Aid or abet another in committing the offense. * * *
 (C) No person shall be convicted of complicity under this section unless an offense is actually committed, but a person may be convicted of complicity in an attempt to commit an offense in violation of section 2923.02 of the Revised Code.
 An individual charged with complicity shall be prosecuted and punished as if that person were a principal offender. See R.C. 2923.03(F); State v. Lundgren (1995), 73 Ohio St.3d 474; State v. Pearson (1980), 62 Ohio St.2d 291, 293.
Pursuant to R.C. 2923.03, this court has held that aiding and abetting contains two basic elements:
An act on the part of a defendant which contributes to the
 execution of a crime and the intent to aid in its commission.
 State v. Jacobs (Sept. 30, 1999), Hancock App. No. 5-99-17, unreported, citing State v. Sims (1983), 10 Ohio App.3d 56, 58. Additionally, this court has stated that `aid' has been defined as "to assist", and `abet' has been defined as "to incite or encourage." Id. Both direct and circumstantial evidence may be introduced to establish the aiding and abetting elements of complicity. Jacobs, citing State v. Cartellone (1981), 3 Ohio App.3d 145, 150.
 Recently, this court held that in order to be guilty as anaider or abettor pursuant to R.C. 2923.03, the complicitor mustpossess the same culpable mental state as that required for theprinciple offense. State v. Mendoza (March 31, 2000), HancockApp. No. 5-99-46, unreported. Additionally, although "a principleoffender need not necessarily be convicted in order to sustainanother's conviction as an aider or abettor, there still must besufficient evidence that an offense occurred." State v. Jacobozzi(1983), 6 Ohio St.3d 59, 62; See also State v. Graven (1977),52 Ohio St.2d 112.
The mere presence of the accused during the commission of a crime, however, does not necessarily amount to being an accomplice. Jacobs, citing State v. Widner (1982), 69 Ohio St.2d 267,269. Therefore, we must analyze the facts with respect to each offense in order to determine whether the record sufficiently supports the complicity convictions.
Abduction
 The statutory elements of abduction are set forth in R.C. 2905.02, which states:
 (A) No person, without privilege to do so, shall knowingly do any of the following:
 (1) By force or threat, remove another from the place where the other person is found;
 (2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear;
 * * *
 R.C. 2901.22 defines the culpable mental state of `knowingly' as:
 A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature
 Appellant admits that Vergith was abducted within the definition of the statute. Therefore, we need not determine whether there is sufficient evidence in the record to support the commission of the principle offense. Instead, Appellant argues that the evidence is insufficient to establish that he knowingly aided or abetted either Zeedyk or Michel during the commission of the crime to constitute complicity. We disagree.
The record demonstrates that at trial, Zeedyk testified that Appellant had nothing to do with the beating of Vergith. However, Michel testified that although he could not remember, Appellant may have helped put Vergith in the back of Zeedyk's truck after the incident. Additionally, Zeedyk testified that Appellant was not involved in untying and releasing Vergith after he and Appellant left Michel's house. However, Zeedyk acknowledged at trial that it is possible that Appellant got out of his truck while Vergith was being released. Zeedyk also testified that he could not remember whether or not Appellant was using his headlights to shine on the back of Zeedyk's truck while Vergith was being released.
In addition to the testimony of Zeedyk and Michel, Dana Roblestestified that during the early morning hours of January 23, 1999,she heard commotion coming from outside her house. When shelooked out her window to investigate, she saw two pickup trucksparked on the street, one of which was shining its headlights onthe truck in front of it. Ms. Robles also testified that she sawtwo people walking around outside the trucks. She then testifiedthat she saw these two individuals get back in their trucks anddrive away. As they drove away, Ms. Robles noticed that thedriver of the second truck had its headlights off.
We also note the testimony of Aaron Giesige, Appellant's co-employee, who stated that Appellant told him about the incident several days after it occurred. Giesige testified that after hearing the story, he was under the impression that Appellant was involved in helping to move Vergith into the back of Zeedyk's truck after Vergith was tied up. In addition to the testimony at trial, the record demonstrates that both Zeedyk and Appellant had several cell phone conversations with each other after leaving Michel's house. In these conversations, they discussed the situation with Vergith and how they were going to resolve the problem.
Therefore, based on the aforementioned evidence in the record,we hold that any rational trier of fact could have found, beyond areasonable doubt, that Appellant knowingly aided and abetted inthe commission of the principle offense of abduction.
 Kidnapping
 The statutory elements of kidnapping are set forth in R.C. 2905.01, which states in pertinent part:
 (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 * * *
 (2) To facilitate the commission of any felony or flight thereafter;
 (3) To terrorize, or to inflict serious physical harm on the victim or another.
* * *
 Whereas the lesser-included crime of abduction requires a knowing removal or restraint of the victim, kidnapping requires a purposeful removal or restraint. State v. Maurer (1984), 15 Ohio St.3d 239, 270. R.C. 2901.22 defines the culpable mental state of `purposefully' as:
 A person acts purposefully when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
 Unlike his argument with respect to the abduction offense, Appellant first argues that the evidence in the record does not sufficiently demonstrate that the elements of the principle offense of kidnapping have been satisfied. Specifically, Appellant argues that there is insufficient evidence in the record to establish that the abduction was conducted for the purpose of inflicting serious physical harm pursuant to R.C. 2905.01(A)(3). Because Vergith did not testify at trial, and because the State did not introduce expert medical testimony, Appellant argues that there is no way to deduce that Vergith sustained the type of serious physical harm envisioned by the legislature. Appellant also argues that because Vergith did not testify at trial, there is insufficient evidence that Vergith was terrorized during the incident, or that the abduction was conducted for the purpose of terrorizing him pursuant to R.C. 2905.01(A)(3). We disagree.
The record contains sufficient evidence that Vergith sustained serious physical harm as a result of the incident. The State introduced several photographs depicting Vergith's physical condition shortly after he was beaten. Additionally, there is testimony from both Zeedyk and Michel that Vergith was beaten and kicked repeatedly. In fact, Zeedyk kicked Vergith so hard in the head that he broke his own foot. The evidence also establishes that Vergith was crawling on his hands and knees and bleeding on Michel's garage floor. Finally, after being beaten for several minutes, Vergith was tied up with rope and thrown in the back of Zeedyk's truck.
The record also contains sufficient evidence that Vergith wasterrorized during the incident. Vergith was beaten to the pointof near unconsciousness. He had no idea where he was being takenor what Zeedyk and Appellant were going to do to him. Finally,after rolling around in the back of Zeedyk's truck for severalmiles, he was untied and released in a remote and unfamiliar areaof Defiance where he walked around in the cold looking for help.
Therefore, based on the aforementioned evidence in the record, we hold that any rational trier of fact could have found, beyond a reasonable doubt, that all the essential elements of the crime of kidnapping have been satisfied.
With respect to the complicity conviction, Appellant alsoargues that the record does not demonstrate that he purposefullyaided and abetted in the commission of kidnapping. In support,Appellant claims that the purpose for tying Vergith up andthrowing him in the back of the truck was merely to get him awayfrom Michel's house. However, we hold that after reviewing thefacts set forth above, any rational trier of fact could havefound, beyond a reasonable doubt, that it was done either for thepurpose of facilitating the commission of a felony or flight, orfor terrorizing or inflicting serious harm on the victim.
Accordingly, Appellant's second assignment of error is not well taken and is therefore overruled.
Assignment of Error No. 3
 Whether the Defiance County Court of Common Pleas committed reversible error to the prejudice of Defendant/Appellant by ignoring the sentencing guidelines as set forth in O.R.C. section 2929.12 and excessively punishing Defendant/Appellant for refusing to enter into a plea agreement and exercising his constitutional right to a trial.
 With respect to felony sentencing, R.C. 2953.08(G)(1) provides that a reviewing court may vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds either that "(a) the record does not support the sentence; * * * [or] (d) the sentence is otherwise contrary to law." State v. Gonzalez (June 30, 1999), Allen App. No. 1-98-84, unreported.
R.C. 2929.12 mandates that the court, in making the final sentencing determination, shall consider certain factors relating to seriousness and recidivism to arrive at an appropriate result. Particularly, R.C. 2929.12(B) states that the court shall consider the following factors to determine whether the "offender's conduct is more serious than conduct normally constituting the offense":
 (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 (3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 (6) The offender's relationship with the victim facilitated the offense.
 (7) The offender committed the offense for hire or as a part of an organized criminal activity.
 (8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
 R.C. 2929.12(C) states that the court shall also consider the following to determine whether "the offender's conduct is less serious than conduct normally constituting the offense":
 (1) The victim induced or facilitated the offense.
 (2) In committing the offense, the offender acted under strong provocation.
 (3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
 (4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.
 R.C. 2929.12(D) requires the sentencing court to consider the following to determine whether "the offender is likely to commit future crimes:"
 (1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing * * *.
 (2) The offender previously was adjudicated a delinquent child * * * or the offender has a history of criminal convictions.
 (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child * * * or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 (4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense * * *.
 (5) The offender shows no genuine remorse for the offense.
 Finally, R.C. 2929.12(E) sets forth the criteria the sentencing court must consider in determining whether "the offender is not likely to commit future crimes":
 (1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.
 (2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
 (3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
 (4) The offense was committed under circumstances not likely to recur.
 (5) The offender shows genuine remorse for the offense.
 After considering the sentencing guideline factors set forth in R.C. 2929.12, and the mitigation factors presented at the sentencing hearing, the trial court sentenced Appellant to four years in prison on the complicity in the commission of kidnapping conviction pursuant to R.C. 2929.14(A)(1), and four years in prison on the complicity in the commission of abduction conviction pursuant to R.C. 2929.14(A)(3). The court then ordered the sentences to be served concurrently for a total of four years.
Appellant argues that the trial court committed reversible error by excessively sentencing him to a prison term of four years as opposed to imposing community control sanctions. In support, Appellant first claims that he was punished for taking the matter to trial instead of entering into a plea agreement. As evidence, Appellant notes that the other two co-defendants received a lesser punishment in exchange for their guilty pleas. Second, Appellant claims that the record does not support the trial court's analysis of the seriousness and recidivism factors set forth in R.C.2929.12.
Initially, we note that the trial court stated at thesentencing hearing that its decision regarding sentencing was inno way affected by Appellant's decision to go to trial rather thanpleading guilty to the offenses. The trial court also noted thatAppellant was convicted of complicity in the commission ofkidnapping, a first-degree felony, which is substantially moreserious than the crimes which the co-defendants pled guilty to.Additionally, the court stated that there is a statutorypresumption in favor of imposing a prison term for a first-degreefelony conviction.
With respect to the factors in R.C. 2929.12 relating to the seriousness of the offenses, the court noted that contrary to Appellant's argument, there are a number of photographs of the victim in the record which demonstrate that he suffered serious physical harm after being beaten up, thrown in the back of Zeedyk's truck, and dumped out in a ditch. The court also noted that these pictures undoubtedly demonstrate that the victim suffered psychological emotional trauma as well.
In mitigation of the seriousness of the offenses, Appellantargues that the court should have considered the fact that he wasmerely a spectator to the incident and that he did not cause orexpect to cause physical harm to the victim. However, Appellant'sargument was not well received by the trial court judge whoreminded Appellant that he was convicted of the complicity chargesby a jury that found him to be more than merely a spectator to theincident.
With respect to the factors relating to Appellant's likelihood to commit future crimes, the court noted that Appellant appeared to express no genuine remorse for the offenses at the sentencing hearing. The court also noted that because Appellant had not previously been to prison, a minimum sentence might be appropriate. However, the court held that pursuant to R.C.2929.14(B) a minimum sentence would demean the seriousness of the offense and would not adequately protect the public. Then, after considering all the circumstances, the court gave deference to Appellant's lack of a prior record and sentenced Appellant within the parameters of R.C. 2929.14.
After examining the record before us, we find that there isnothing to suggest that the trial court's decision was based onAppellant's unwillingness to plead guilty to the offenses ascharged. This was clearly stated by the trial court judge at thesentencing hearing. Also, the trial court correctly consideredand discussed all the criteria in R.C. 2929.12 prior to sentencingAppellant. As such, we cannot clearly and convincingly find thatthe evidence in the record does not support the sentences.
Accordingly, Appellant's third assignment of error is not well taken and is therefore overruled.
Having found no error prejudicial to the Appellant, in theparticulars assigned and argued, we hereby affirm the judgment ofthe trial court.
 Judgment affirmed
 ______________________________ WALTERS, PRESIDING JUDGE
 HADLEY, P.J., and SHAW, J., concur.